NO JS-6

Anna Y. Park, SBN 164242
Nakkisa Akhavan, SBN 286260
Ella Hushagen, SBN 297990
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 785-3032
Facsimile: (213) 894-1301

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> and <br><br> SANDRA WHITFIELD, <br><br> Plaintiff-Intervenor, <br><br> vs. <br><br> RADIANT SERVICES CORP., BARONHR, LLC, and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: CV 22-6517-GW-RAOx <br><br> **CONSENT DECREE RE BARONHR, LLC** |

[PROPOSED] CONSENT DECREE

## I.   **INTRODUCTION**

Plaintiff U.S. Equal Employment Opportunity Commission (hereinafter "EEOC" or "Commission") and Defendant BaronHR, LLC hereby stipulate to entry of this Consent Decree to resolve the Commission's Complaint against BaronHR, LLC in *U.S. Equal Employment Opportunity Commission v. Radiant Services Corp.*, filed on September 13, 2022 in the United States District Court for the Central District of California (the "Action"). Defendant BaronHR, LLC encompasses all of the affiliated businesses which include the following entities: BaronHR, Inc.; BaronHR East, Inc.; BaronHR Group, LLC; BaronHR Healthcare LLC; Fortress Worldwide Holdings; BaronHR Hospitality LLC; BaronHR Security, Inc.; BaronHR Security, LLC; BaronHR Technical, LLC; BaronHR West, Inc.; BaronTransport, LLC; Hunter Staffing, Inc.; Legendary Staffing, Inc.; and Titan Personnel, Inc. (collectively, "BaronHR" or "Defendant"). The scope of the Decree, described herein, applies to all the BaronHR affiliate businesses under the BaronHR umbrella.

The Complaint alleges Defendant BaronHR discriminated against a class of non-Hispanic individuals (hereinafter referred to as the "Claimants") by failing to recruit and refer them based on their national origin (non-Hispanic) and/or race (Asian, Black, White) in violation of Section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, as amended ("Title VII"). The Complaint alleges Defendant BaronHR failed to recruit and refer a class of male and female workers based on sex in violation of Title VII. The Complaint further alleges that Defendant BaronHR used an unlawful qualification standard by recruiting and referring physically fit candidates with no history of injury, which excludes individuals with disabilities, perceived disabilities, and record of disability in violation of 42 U.S.C. §§ 12112(d)(2)(A) and 12112(b)(6) of the Americans with Disabilities Act ("ADA").

## II.   **PURPOSES AND SCOPE OF THE CONSENT DECREE**

1.     The Parties to this Consent Decree ("Decree") are Plaintiff EEOC and Defendant BaronHR (collectively, the "Parties"). This Decree shall be binding on and enforceable against BaronHR and its officers, directors, employees, agents, successors, and assigns for purposes of the injunctive relief remedies.  The scope of this Decree is company-wide.

2.     The parties have entered into this Decree for the following purposes:

    a.     To provide appropriate monetary and injunctive relief;

    b.     To ensure that Defendant's employment practices comply with federal law;

    c.     To ensure a workplace free from discrimination, especially as it relates to national origin, race, sex, and disability;

    d.     To provide training to Defendant's employees as to their rights under Title VII and the ADA and Defendant's managers, supervisors, and hiring officials regarding their obligations and responsibilities while engaged in employment practices such as recruiting and hiring employees under Title VII and the ADA;

    e.     To review and revise Defendant's policies, practices, and procedures for recruiting and referring employees;

    f.     To provide an appropriate and effective mechanism for receiving and handling discrimination complaints in the workplace; and

    g.     To avoid the expensive and protracted costs incident to this litigation.

### III.     <u>RELEASE OF CLAIMS</u>

3.     This Decree fully and completely resolves all issues, claims and allegations raised by the EEOC against Defendant in this Action.

4.     Nothing in this Decree shall be construed to preclude the EEOC from bringing suit to enforce this Decree in the event that Defendant fails to perform the promises and representations contained herein.

5.     Nothing in this Decree shall be construed to limit or reduce Defendant's obligation to comply fully with Title VII and the ADA, or any other federal anti-

discrimination statute.

6.     This Decree in no way affects the EEOC's right to bring, process, investigate, or litigate charges other than those covered by this Action that may be in existence or may later arise against Defendant in accordance with standard EEOC procedures as this Decree only resolves the issues, claims, and allegations raised by the EEOC against Defendant in this Action.

## IV.     <u>JURISDICTION AND SCOPE</u>

7.     The Court has jurisdiction over the Parties and the subject matter of this Action.  The Action asserts claims that, if proven, would authorize the Court to grant the equitable relief set forth in this Decree.

8.     The terms and provisions of this Decree are fair, reasonable, and adequate and entered into by the parties in good faith.

9.     This Decree conforms with the Federal Rules of Civil Procedure, Title VII, and the ADA. It is not in derogation of the rights or privileges of any person.

10.    The Court shall retain jurisdiction of this action during the duration of the Decree for the purposes of entering any order, judgment, or decree that may be necessary to implement the relief provided herein.

11.     Defendant represents that as of January 26, 2024, it they no longer has employees and is no longer in operation as a staffing agency, placing employees. Defendant represents that each of its associated businesses operating under BaronHR including BaronHR, Inc.; BaronHR East, Inc.; Fortress Worldwide, Inc.; BaronHR Group, LLC; BaronHR Healthcare LLC; BaronHR Hospitality LLC; BaronHR Security, Inc.; BaronHR Security, LLC; BaronHR Technical, LLC; BaronHR West, Inc.; BaronTransport, LLC; Hunter Staffing, Inc.; Legendary Staffing, Inc.; and Titan Personnel, Inc are no longer in operation. "Operation" is defined as soliciting and entering into contracts with companies for the procurement of temporary labor, accepting applications from individuals seeking temporary work assignments, and assigning individuals to clients for temporary

work.

12.     The EEOC relies on the foregoing representations to its detriment. Should Defendant or its agents, including but not limited to, Eric Welch or Luis Perez (Founder, former President/CEO, Chairman), resume operations (as defined above) under any of the BaronHR or affiliated businesses or a successor entity, Defendant shall inform the EEOC within three (3) business days.

13.     In the event of: the EEOC's discovery through any means that any of Defendant's representations in this Section are false (or do not continue to be true throughout the pendency of the Decree), the release of the EEOC's claim against Defendant in the Action is rescinded, and the EEOC will pursue all applicable remedies against Defendant, including but not limited to monetary and injunctive relief, that the court deems appropriate.

## V.     EFFECTIVE DATE AND DURATION OF DECREE

14.     The provisions of this Decree are effective immediately upon the date which this Decree is entered by the Court ("the Effective Date"). This Decree shall remain in effect for seven (7) years after the Effective Date.

## VI.     COMPLIANCE AND DISPUTE RESOLUTION

15.     The Parties agree that if the EEOC has reason to believe that Defendant has failed to comply with any provision of this Decree, the EEOC may bring an action before this Court to enforce the Decree.  Prior to initiating such action, the EEOC will notify Defendant c/o Abe G. Salen of Wesierski & Zurek LLP, in writing, of the nature of the dispute.  This notice shall specify the particular provision(s) that the EEOC believes Defendant has breached.  Defendant shall have thirty (30) days from the written notice to attempt to resolve or cure the breach.  The Parties may agree to extend this period upon mutual consent.

16.     After forty-five (45) days, inclusive of the thirty (30) days to resolve or cure the breach have passed from the written notice with no resolution or agreement to extend the time, the EEOC may petition this Court for resolution of the dispute,

seeking all available relief, including an extension of the term of the Decree for such period of time that the Court finds the Decree was not complied with and/or any other relief that the Court may deem appropriate.

17.     In the event of insufficient or non-payment of any portion of the Settlement Fund by Defendant, the EEOC may petition the Court for immediate relief and enforcement of the Decree without going through the dispute resolution process. The EEOC can seek all appropriate relief to collect on the Settlement Fund.

## VII.   MODIFICATION AND SEVERABILITY

18.     This Decree constitutes the complete understanding of the Parties with respect to the matters contained herein.  No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing and signed by an authorized representative of each of the Parties.

19.     If one or more provisions of the Decree are rendered unlawful or unenforceable, the Parties shall make good faith efforts to agree upon appropriate amendments to this Decree in order to effectuate the purposes of the Decree.  If the parties are unable to reach an agreement, the Court shall order appropriate alternative provisions in order to effectuate the purposes of the Decree.  Should one or more provisions of this Decree be deemed unlawful, all other lawful and enforceable provisions will remain in full force and effect.

## VIII.  MONETARY RELIEF

20.     In settlement of this Action, Defendant shall pay a total of $2.2 million ("Settlement Amount").  The Settlement Amount is being paid on behalf of Defendant by its insurer.

21.     The EEOC shall have the sole discretion to determine eligibility and designation of the Claimants, characterization, and allocation of the Settlement Amount ("Eligible Claimant").  Distribution of any monies shall be at the sole discretion of the EEOC; Defendant shall not have input.

22.     After the Effective Date and within  forty-five (45) days of the  Claims

Administrator establishing the account as provided for in Paragraph 28, Defendant will pay or cause to be paid the Settlement Amount of $2.2 million into an interest-bearing Qualified Settlement Fund created under Section 468(b) of the Internal Revenue Code ("Settlement Fund") to be distributed to the Eligible Claimants by a Claims Administrator.  Defendant will provide the EEOC with written verification of funding within three (3) days of making the required deposit.

23.    Any interest earned from the Settlement Fund may be used to pay the Claims Administrator.

24.    Defendant will not condition the receipt of monetary relief on any Claimant's agreement to (a) maintain as confidential the facts and/or allegations underlying their claim and the Complaint and the terms of this Decree; (b) waive their statutory right to file a charge with any governmental agency; (c) refrain from reapplying for a job with Defendant; or (d) a non-disparagement and/or confidentiality agreement.

25.    Under no circumstances will any portion of the Claims Fund described herein revert to Defendant or its insurer. If any of the funds remain unclaimed, the EEOC will have the discretion to supplement payments made to Eligible Claimants.

## IX.   CLAIMS ADMINISTRATION

26.    Within thirty (30) days of the Effective Date, the EEOC will appoint a Claims Administrator, to oversee the claims process and effect payments to Eligible Claimants as directed by the EEOC. If the Claims Administrator initially hired thereafter declines to serve or to carry out its duties under this Decree, the EEOC will appoint a new Claims Administrator.

27.    Defendant will pay its allocated share, as determined in the sole discretion of the EEOC, of costs associated with the selection and retention of the Claims Administrator in the amount not to exceed $140,000.

28.     The Claims Administrator will work with the EEOC to carry out the terms of this Consent Decree.  The Claims Administrator will be responsible for: (a) establishing, within fifteen (15) calendar days of being appointed, an interest-bearing account to hold in trust the Settlement Fund and notifying the EEOC and Defendant when the account is established and ready for deposit of the Settlement Fund; (b) receiving and holding the Settlement Fund in trust, until distribution; (c) establishing an informational website accessible to the Parties and Potential Claimants; (d) establishing an email address, mobile phone number, and/or other digital means of contact accessible to Potential Claimants to submit questions and Claim Forms; (e) establishing a toll-free telephone number accessible to Potential Claimants; (f) responding to information requests from Potential Claimants; (g) sending notices and Claim Forms to Potential Claimants; (h) obtaining updated addresses for Potential Claimants and re-mailing returned notices; (i) receiving and processing Claim Forms as provided in the Consent Decree; (j)  communicating, receiving, and processing documents from and with Potential and Eligible Claimants; (k) sending notices of ineligibility to those Claimants determined by the EEOC not to be Eligible Claimants; (l) issuing payments to Eligible Claimants in accordance with the final Distribution List provided by the EEOC; (m) calculating withholding and payroll taxes and issuing tax reporting forms to each Eligible Claimant who receives a settlement payment; (n) depositing the employer-share of payroll taxes with the appropriate taxing authorities; (o) filing tax returns and issuing IRS Form 1099's with respect to the Settlement Fund; (p) communicating as necessary with the EEOC; (q) tracking all necessary data regarding contact with Potential and Eligible Claimants; (r) reissuing checks where required in consultation with the EEOC; (s) distribution of the Settlement Fund; and (t) final distribution of the Settlement Fund, if any.

29.     Within thirty (30) calendar days after being retained, the Claims Administrator in consultation with the EEOC will establish: (a) a website that will be accessible to the EEOC and Potential Claimants; (b) an email address for purposes of communicating with Potential Claimants by email; and (c) a toll-free telephone number that will be accessible to Potential Claimants.

30.     Information posted on the website and available on a recorded message on the toll-free telephone number will be limited to the general information about the claim process (*e.g.*, claim-filing deadline; projected distribution date when known).  The website will provide information regarding the Settlement Fund and how to complete the Claim Form.  The website shall include an embedded Claim Form and the Claim Form shall also be available for download by Potential Claimants.  The website shall also explain how Potential Claimants can seek assistance in completing the Claim Form.

### Notice of Settlement and Claim Form

31.     After the Claims Administrator is retained, the EEOC will work with the Claims Administrator to develop a claims process including a notice and claim form. The EEOC will make the final determination regarding the form and contents of these documents.

### Mailing Notice of Settlement, Claim Form, and Utilization of Media

32.     The EEOC will provide the Claims Administrator the List of Potential Claimants provided through TempWorks.  The list covers the period of 2015 to 2024 of individuals who may have been impacted by defendant's practices ("Potential Claimant").

33.     The Claims Administrator will provide Notice to Potential Claimants via text and/or email with a link tothe Notice of Settlement and the Claim Form.  If text and/or email is not successful, then the Claims Administrator will mail via USPS Mail each Potential Claimant the notice of the claims process throughout the term of the Decree.  The Claims Administrator will provide to the EEOC

[PROPOSED] CONSENT DECREE

information of the claims process via text, email, and mail on a weekly basis.

34.     For each Notice that is returned as undeliverable, via text, email, or mail, the Claims Administrator will, work with the EEOC on whether researching follow up contact information is necessary. If the EEOC deems it necessary, then within twenty (20) calendar days of receiving notification from the EEOC the claims administrator will:  (1) research the Potential Claimant's most-recent address, using best efforts and a database search to locate the Potential Claimant; and (2) (a) resend the claims process information  to the new or different address via USPS Priority Mail if a new or different address is obtained or via text and/or email, and (b) advise the EEOC of the efforts taken to locate the Potential Claimant if no new or different address is obtained.

## Claim Form Evaluation

35.     The Claims Administrator will provide to the EEOC electronically all documents, including all the Claim Forms and accompanying information submitted by each Claimant for the EEOC's use in assessing who is an Eligible Claimant.  The EEOC has sole discretion in determining the scoring criteria, eligibility, and monetary relief amounts for each Claimant.

The EEOC shall provide the Claims Administrator one or more lists of Eligible Claimants including their names, current addresses, the amount to be paid to each, the classification of such amounts to be paid, and any additional relevant identifying information ("Distribution List").  The EEOC, based upon the claims process, will submit subsequent Distribution Lists.

## Notice and Payment to Eligible Claimants

36.     Upon receiving the Distribution List(s) from the EEOC, the Claims Administrator will pay each Eligible Claimant on the EEOC's approved Distribution List(s). The Claims Administrator will issue 1099 for all payments made.

## Claims Administrator Reports

[PROPOSED] CONSENT DECREE

37.     On a quarterly basis, the Claims Administrator will provide regular reports to the EEOC regarding its efforts to contact Claimants, its receipt of releases, the mailing of checks, and the depositing of checks by Claimants. The Claims Administrator will provide the EEOC with copies of checks and IRS 1099 forms.

## X.     GENERAL INJUNCTIVE RELIEF

38.     Defendant, its directors, officers, agents, managers (including all supervisory employees), other employees, successors, assigns, and all those in active concert or participation with them, or any of them, shall be enjoined from discriminating against any individual on the basis of national origin, race, sex, or disability including, without limitation, failing to recruit and hire non-Hispanic individuals, failing to recruit and hire men and women, and failing to recruit and hire disabled individuals.

39.     Defendant, its directors, officers, agents, managers (including all supervisory employees), other employees, successors, assigns, and all those in active concert or participation with them, or any of them, are hereby enjoined from implementing or permitting any action, policy, or practice that subjects any current or former employee or applicant of Defendant to retaliation, because he or she has in the past, or during the duration of this Decree: a) opposed any practice made unlawful under Title VII or the ADA; b) filed a charge of discrimination with the EEOC alleging such practice; c) testified or participated in any manner in an internal or external investigation or proceeding relating to any claim of a violation of Title VII or the ADA; d) been identified as an Eligible Claimant with respect to the Action; e) asserted any right under this Decree; or f) sought or received any relief in accordance with this Decree.

40.     Defendant, its directors, officers, agents, managers (including all supervisory employees), other employees, successors, assigns, and all those in active concert or participation with them, or any of them, shall maintain, and are enjoined from destroying, all hiring and placement related materials with respect to all positions,

including but not limited to, job postings, applications, resumes, inquiries concerning opportunities for work, correspondence with potential applicants or Staffing Agencies concerning opportunities for work, applicant evaluations, notes concerning interviews, and information regarding individuals placed or referred for work for the duration of this Decree.  This includes, but is not limited to, applications for hire by both successful and non-successful applicants. All such materials must be retained in their original form or in an accessible electronic format for the term of the decree.

## XI.    SPECIFIC INJUNCTIVE RELIEF

### A.    Defendant's Operations and Specific Injunctive Relief

41.    Defendant represents that it is not conducting business and does not intend to start conducting business for the duration of the Decree. Should Defendant resume operations during the term of the Decree, of any of the entities identified herein or as a successor entity, Defendant shall notify the EEOC within three (3) days. Upon resuming operations, Defendant shall comply with the provisions of the Decree for the duration of the Decree. The Effective Date triggering all of Defendant's duties and obligations under the Decree shall be the date upon which Defendant notifies the EEOC that it has begun renewed operations.

### B.    EEO Monitor

42.    After the Effective Date and within thirty (30) days of Defendant resuming operations, Defendant will retain an outside third-party Equal Employment Opportunity Monitor (the "Monitor") with demonstrated experience in recruitment and hiring practices and discrimination under Title VII and the ADA to assist Defendant with the compliance of this Decree. The Monitor shall be subject to the EEOC's approval, which shall not be unreasonably withheld. The Monitor shall have access to documents and employees. Defendant agrees to bear all costs associated with the selection and retention of the Monitor, and the costs associated with the performance of the Monitor's duties. For the duration of the Decree, the

Monitor's responsibilities shall include:

a.     Assisting in drafting and implementing policies and procedures prohibiting discrimination against applicants and employees based on race, national origin, sex, and disability, including qualification standards and how to identify and handle discriminatory client requests;

b.     Assisting in drafting and implementing complaint procedures for addressing complaints of discrimination by applicants and employees, to ensure that Defendant fully complies with Title VII, the ADA, and all requirements set forth in this Decree;

c.     Ensuring all officers and employees, including managers, supervisors, human resources officers, and recruiters are trained on their rights and responsibilities under Title VII, the ADA, Defendant's anti-discrimination policies and procedures, and this Decree, including the responsibility to provide a workplace free of  discrimination, reject discriminatory client requests, and to report and/or promptly respond to all allegations or complaints;

d.     Reviewing Defendant's centralized tracking system or Complaint Log to track and provide feedback on Defendant's: practices for documenting complaints; document retention; investigation and resolution; and the remedial action and disciplinary action taken in response to complaints;

e.     Reviewing and modifying Defendant's Recruitment Plan including, but not limited to, reviewing Defendant's job descriptions and job postings, to ensure Defendant attracts candidates who are non-Hispanic, women, and disabled individuals;

f.     Monitoring Defendant's TempWorks data (or any other system adopted during the term of the Decree), payroll data, Applicant Flow Data and Log , and its progress toward achieving its Hiring Goals to ensure Defendant does not discriminate in recruitment and referral on the bases of race, national origin, or sex;

g.     Ensuring that Defendant complies with all deadlines, and timely

submits all reports required by this Decree;

      h.    Preparing semi-annual reports and an exit report to the EEOC regarding Defendant's progress and compliance under this Decree;

      i.    Ensuring distribution of documents as required by this Decree; and

      j.    Otherwise ensuring Defendant's compliance with this Decree.

43.    When Defendant resumes operations and within thirty (30) days after the selection of the Monitor, Defendant shall ensure that the EEOC have access to all records, documents, and data which the Monitor deems necessary or appropriate to perform the duties required by the Consent Decree, including: (1) TempWorks (or any new applicant and workforce data management system Defendant utilizes) data; (2) Payroll data maintained by Defendant for all current employees; (3) Defendant's Outlook database files as maintained by Defendant related to communications with clients regarding individuals who applied; and (4) each client's request for the number of hours of temporary work by pay period, the number of hours of temporary work Defendant actually assigned to each client's request by pay period, the number of hours Defendant's temporary worker(s) actually worked related to each client's request by pay period, the hourly rate and hours billed for each temporary worker of Defendant. The Monitor may also inspect Defendant's premises and records, and interview with Defendant's officers, agents, applicants, employees, including recruiters, contractors, and staffing agencies. The Monitor may directly contact Defendant's applicants or employees, including to obtain information about their hiring and placements.

44.    The Defendant or the Monitor will provide the EEOC with a report every six (6) months after appointment, describing their affirmative efforts and findings, including specific steps taken to review and analyze Defendant's TempWorks (or any new applicant and workforce data management system Defendant utilizes) data, payroll data, work placement records, and/or Outlook database files to review whether non-Hispanic workers, men or women, and workers with disabilities,

perceived disabilities and/or record of disability were disadvantaged with regard to recruitment and referral. The reports will also include the Monitor's findings as to: (1) whether there were disparities that occurred during the reporting period based upon the Monitor's investigations; and (2) whether Defendant complied with its obligations under this Consent Decree.

45.     If the EEOC or the Monitor determines that there is any disparity in the manner that Defendant hired and/or placed employees that disfavored applicants based on race, national origin, disability, and/or sex, or that Defendant has not complied with its obligations under this Consent Decree, the EEOC may review the relevant documents, reports, and information that the Monitor used to identify any such disparity. The EEOC may communicate with the Monitor as needed to discuss the Monitor's reports or findings or obtain clarification.

**C.     Website Statement of Equal Opportunity**

46.     When Defendant resumes operations,  within thirty (30) days thereafter, Defendant will include the following language in bold on its website confirming that Defendant is an equal opportunity employer, specifically stating that Defendant will not discriminate based on race, national origin, sex, or disability, and indicating how to lodge a complaint. The font size of this language will be equal to or greater than the font size of all other language, other than headers and logos:

> **[Entity Name] is an Equal Opportunity Employer. We do not discriminate on the basis of race, national origin, color, religion, sex, pregnancy, age or disability or any other status protected by law.  If you believe you were subjected to discrimination, you should contact _____ at _____ to make a complaint.**

47.     Defendant will certify in writing to the EEOC that it has posted this language to its website.

**D.      Posting and Distribution of Notices**

48.      When Defendant resumes operations and within thirty (30) days of the selection of the Monitor, and for the seven-year (7) duration of the Consent Decree, Defendant will conspicuously post and maintain a Notice of Lawsuit and Resolution which will be provided by the EEOC, at each of its branch offices nationwide, in all prominent places where employee notices are posted, including any reception or waiting area visually accessible to applicants and employees of Defendant. Within seven (7) days of posting, Defendant will certify to the EEOC in writing that it has posted a copy of the Notice of Lawsuit and Resolution.

49.      When Defendant resumes operations and within thirty (30) days of selection of the Monitor, Defendant will begin providing to all new applicants the Statement to Applicants to be approved  by the EEOC at the time of their application. The Statement affirms Defendant's commitment to equal employment opportunity and advises applicants that they may contact the if they believe that they were not referred for assignment because of their race, national origin, sex, or disability. Within ten (10) days of beginning to provide all new applicants during an interview the Statement to Applicants, Defendant will certify in writing to the EEOC that it is in compliance with this term. Annually thereafter, Defendant will certify to the Monitor that it has provided the Statement to Applicants during interviews.

50.      When Defendant resumes operations and within fourteen (14) days thereafter, Defendant will issue a Letter to Clients signed by the President and CEO or Defendant's designated representative and  approved by the EEOC to all current clients describing the obligations of Defendant and its clients under federal anti-discrimination laws and emphasizing Defendants' commitment to abide by such laws. Within twenty-one (21) days from the selection of the Monitor, or when Defendant resumes operations, Defendant must certify to the EEOC that it has given the Letter to Clients to all its clients. Annually thereafter, Defendant shall

certify to the Monitor that it has provided the Letter to Clients to all its existing clients.

51.     Defendant will provide a copy of the Letter to Clients to all new clients within seven (7) days of engagement.

**E.     Relationship with Clients**

52.     Defendant will provide to all temporary workers a copy of the Defendant's anti-discrimination policies and procedures along with the client's anti-discrimination policies and procedures so that Defendant can ensure the temporary workers receive them no more than five (5) days after their initial assignment.

53.     Defendant will work with the Monitor to develop or evaluate protocols to ensure that there are proper mechanisms for handling complaints raised by workers placed at Defendants' clients' job locations to ensure that complaints by temporary workers are communicated to Defendant and its clients.

54.     Defendant will instruct its clients to notify Defendant within three (3) days of any complaint made by an applicant or employee regarding discrimination on the bases of race, national origin, sex, or disability.

55.     Defendant will provide its clients copies of its Recruitment Plan.

**F.     Anti-Discrimination Policies and Procedures**

56.     When Defendant resumes operations and within ninety (90) days of the selection of the Monitor, Defendant shall, with the assistance of the Monitor, create or revise its written recruitment and hiring policies to ensure they prohibit discrimination based on race, national origin, sex, and disability in the workplace.

57.     Defendant's policies shall include, at a minimum:

        a.      A strong and clear commitment to a workplace free from discrimination, harassment, and retaliation;

        b.      A clear explanation of prohibited conduct under the Policy, including an explanation about how to identify and handle discriminatory requests by clients;

        c.      Clear instructions to all applicants and employees about how to make

a complaint of discrimination, including identifying the person(s) to whom a complaint can be made;

d.      A description of Defendant's procedure for responding to complaints of discrimination, consistent with the requirements herein;

e.      Assurance that applicants and/or employees who make complaints of discrimination or provide information related to such complaints will be protected against retaliation;

f.      A requirement that all managers and supervisors escalate all verbal and written complaints of discrimination they receive to the Monitor within three (3) days of receiving such a complaint;

g.      A requirement that all employees, including recruiters, supervisors, and managers, notify the Monitor within three (3) days of any and all discriminatory requests by any BaronHR client that would deprive an applicant or employee of any employment opportunity;

h.      A description of the possible consequences, up to and including termination, that will be imposed for violation of the anti-discrimination policy by any BaronHR employee, including managers and supervisors;

i.      Assurance that BaronHR disciplinary policies hold all employees, including owners, managers, and supervisors, accountable for engaging in prohibited conduct such as complying with discriminatory requests by clients and/or failing to take appropriate action as required by its policies and procedures.

58.      Within ninety (90) days of the selection of the Monitor, or when Defendant resumes operations, Defendant shall distribute this revised Policy to all applicants and employees in English and Spanish. Thereafter, Defendant shall distribute the revised Policy within five (5) days of the hire date of any new employee(s), including direct and temporary employees.

**G.      Centralized Tracking and Investigation of Complaints**

59.      When Defendant resumes operations and within sixty days (60) days of the

selection of the Monitor, Defendant will establish an independent hotline where employees, applicants, and witnesses may make any allegations of discrimination, harassment, and retaliation. Defendant shall notify all employees and applicants via notice posting, notify all clients via the letter described herein, and include on every job posting a statement that anyone can direct complaints of discrimination directly to the hotline, and provide the dedicated e-mail address and phone number for the hotline.

60.    When Defendant resumes operations and within sixty (60) days of the of the selection of the Monitor, Defendant will work with the Monitor to create and maintain a procedure for the centralized tracking of applicant and employee complaints based on race, national origin, sex, and disability.  These tracking records shall include the following information:

a.    The name(s) and contact information of the individual(s) alleging discrimination;

b.    The date and nature of the complaint;

c.    A description of the alleged discriminatory events and the dates the events took place;

d.    Whether Defendant referred the individual alleging discrimination to a temporary assignment, and if yes, identification of the client where s/he was referred;

e.    The names of the alleged perpetrators of discrimination, including whether the alleged perpetrator has been the subject of any previous complaints of discrimination or retaliation;

f.    The identity of the supervisor, manager, recruiter, or human resources personnel who investigated and/or made a determination regarding the complaint;

g.    A description of what the supervisor, manager or human resources personnel did when s/he conducted an investigation into the complaint;

h.    The results of Defendant's investigation and subsequent determination

regarding the complaint; and

     i.    Description and dates of any remedial action taken, if any, in response to the complaint.

     61.    Defendant will notify the Monitor of any complaint (formal or informal, written or oral, internal or external) of discrimination based on race, national origin, disability, or sex from any employee or applicant within three (3) days of receipt, and provide the name, home address, telephone number, and e-mail address of the complainant; the name of the alleged discriminator; the name, home address, telephone number, e-mail address of any witnesses; and a summary of the complaint. Defendant must provide any additional information or documentation within its custody, possession, or control requested by the Monitor.

     62.    The Monitor will provide the EEOC with a report every six (6) months after being appointed: (1) detailing all complaints of discrimination based on race, national origin, sex, or disability received during the period and the particulars of the complaint; and (2) describing all steps taken to investigate each complaint. The written report will also include a copy of any findings or resolutions reached concerning any investigation concluded during the reporting period, including any corrective action recommended by the Monitor and any corrective action taken by Defendant.

**H.    <u>Reasonable Accommodation Log</u>**

63.    When Defendant resumes operations and wwithin sixty (60) days of the selection of the Monitor, Defendant with the Monitor shall create and maintain a procedure for the centralized tracking of applicant and employee requests for reasonable accommodation for a disability. The log shall include:

     a.    The name(s) and contact information of the individual(s) requesting a reasonable accommodation;

     b.    The date and nature of the accommodation sought;

     c.    A description of the individual's limitations;

      d.     Whether the individual is an applicant seeking a temporary assignment;

      e.     All steps taken by Defendant to engage in the interactive process;

      f.     The identity of the supervisor, manager, recruiter, or human resources personnel who participated in the interactive process;

      g.     A description of all alternative accommodations explored;

      h.     The results of Defendant's interactive process; and,

      i.     If the individual was an applicant, whether the applicant was placed in a temporary work assignment.

64.    The Monitor will provide the EEOC with a report every six (6) months after being appointed: (1) detailing all requests for reasonable accommodation; (2) describing all steps taken to engage in the interactive process with regard to each request, including the exploration of alternative accommodations; and (3) describing the resolution of the process. The written report will also set forth improvements or recommendations by the Monitor as to its reasonable accommodation procedure.

**I.  <u>Training</u>**

65.    When Defendant resumes operations and within sixty (60) days of the selection of the Monitor, and every six (6) months thereafter, Defendant shall provide training to all non-managing employees, including direct and temporary employees.  The training shall be conducted in English and Spanish and shall cover federal laws regarding Defendant's revised Policies and complaint process, and prohibited employment discrimination on the basis of race, national origin, sex, and disability. All persons required to attend such training shall verify their attendance in writing. The training shall be no less than one (1) hour long.

66.    Within sixty (60) days of the selection of the Monitor, or when Defendant resumes operations, and annually thereafter, Defendant shall provide training to its human resources, hiring officials, managers, and supervisors. All persons required

to attend such training shall verify their attendance in writing.

       a.     The training shall be conducted by an outside trainer paid for by Defendant, with established experience conducting anti-discrimination and anti-retaliation training and workplace investigations.

       b.     The Monitor may serve as the trainer. If Defendant does not select the Monitor as the trainer, it must submit all training materials and identification of the trainer to the Monitor for review and comment no later than thirty (30) days prior to holding the first training session.

       c.     The training will, at a minimum: explain the rights of applicants and employees under federal anti-discrimination laws; explain proper recruitment and referral practices that are consistent with Title VII and the ADA; describe or portray real-world examples of unlawful conduct, specifically as it relates to interviewing, screening, and hiring and placement of workers; encourage bystander reporting; review BaronHR's anti-discrimination policies developed pursuant to this Decree ; and describe BaronHR's record-retention policy.

       d.     The training shall be no less than two (2) hours in length.

67.    Defendant's trainings shall be conducted in-person and be interactive, with real-world scenarios, opportunities for question and answer sessions, and a post-training quiz to test participants' comprehension and retention.

68.    Defendant shall produce to the Monitor documents verifying the occurrence of all training sessions conducted as required under this Decree. This includes the written training materials used, a description of the training provided, a list of the individuals who conducted the training, and a list of the names and job titles of attendees at each training session.

**J. Recruitment**

69.    If the Defendant resumes operations, Defendant shall create and implement a Recruitment Plan, in consultation with the Monitor, to increase the pool of non-Hispanic, female, and disabled applicants for consideration into all of Defendant's

job openings. The recruitment plan shall include:

a.      Providing written notice of all job openings;

b.      Ensuring that all job postings and communications to Defendant's staffing agencies emphasize all positions are open regardless of race, national origin, sex, and disability;

c.      Ensuring that all job postings have no indication of Spanish language requirement, unless justified by actual business necessity; i.e., Spanish is not required for low skill or entry level positions; and

d.      Job postings reach a diverse applicant pool by posting on at minimum one site of broad-usage, including, but not limited to, Indeed, Ziprecruiter, Facebook, Monster, and Craigslist.

70.    If and when Defendant resumes operations, Defendant shall provide the Monitor with a report every six (6) months regarding its Recruitment Plan. The Recruitment Plan report shall specifically provide:

a.      A detailed description of each program/process which Defendant implemented to recruit individuals who are non-Hispanic, women, and disabled individuals as detailed herein;

b.      The date that each program/process was implemented;

c.      The name(s) and job title(s) of those employees responsible for implementing each program/process;

d.      Copies of all documents reflecting proof of the recruitment being undertaken; and

e.      Identify mechanisms for holding employees involved in the recruitment process accountable for implementing the Recruitment Plan.

**K.    Applicant Flow Data and Log**

71.    If and when Defendant resumes operations, Defendant shall maintain all job applications (including all documents submitted by the applicants in connection with the application process) and applicant flow data for the entire duration of this

Decree and as required under federal law. To the extent Defendant uses TempWorks or another external online service and/or third party for applicants to apply for positions with Defendant, Defendant must ensure that it maintains applications and documents produced by the applicants during the Decree. Defendant shall also maintain all documents related to those applicants they considered for referral, hire and ultimately hired, including notes related to the selection process. Defendant shall produce the Applicant Flow Data and Applicant Flow Log as described below to the Monitor semi-annually.

72.    If and when Defendant resumes operations, Defendant shall create and maintain an Applicant Flow Log for each job opening during the Decree. Defendant shall submit the Applicant Flow Log in excel or electronically with links to the relevant attachments to the Monitor on a semi-annual basis for review. The Applicant Flow Log and attachments shall include the following information for each job opening:

    a.    Date of the opening;

    b.    Job title and description;

    c.    Where all advertisements were placed in connection with recruiting for the position, as well as a link to copies of the job announcement;

    d.    Identities of the clients Defendant worked with, and positions it filled;

    e.    Number of applications and inquiries received;

    f.    Name, contact information, race, national origin, and sex of the applicants;

    g.    Any documentation submitted by the applicants in connection with the application process;

    h.    Whether the applicant requested a reasonable accommodation;

    i.    The names and job titles of any individuals involved in the interactive process;

    j.    If the applicant requested a reasonable accommodation, whether it

[PROPOSED] CONSENT DECREE

was granted;

      k.    If the applicant requested a reasonable accommodation, whether the applicant was selected;

      l.    The names and job titles of any individuals involved in the recruitment and hiring process;

      m.    Whether and when the applicant was interviewed;

      n.    Any records or documents pertaining to the selection process, including, but not limited to, interview notes;

      o.    Name, race, national origin, and sex of the selected applicant; and

      p.    If the applicant was not selected, the reason for the denial, if any;

      q.    Any complaints made by applicants regarding discrimination during the recruitment and hiring process;

      r.    If the applicant was selected, where they were assigned; and

      s.    If the applicant was selected, the duration of their assignment.

**L.    <u>Hiring/Referral Goals</u>**

73.    If and when Defendant resumes operations, each year, during the pendency of the Decree, Defendant shall use Best Efforts to obtain workers such that a percentage of non-Hispanic, disabled, and female workers referred for assignment equals a certain percentage of all workers referred for assignment to promote equal employment opportunity.  The percentages for non-Hispanic, disabled,  and female workers will be determined by the EEOC when Defendant resumes operations.   If Defendant fails to meet this annual hiring/referral goal, Defendant shall explain the basis for the deficiency and work with the Monitor on additional steps to achieve compliance. The EEOC and the Monitor shall review Defendant's good faith compliance with its obligations under this Section of the Decree.

**M.    <u>Record-Keeping</u>**

74.    If and when Defendant resumes operations and for the duration of the Decree thereafter, Defendant shall establish a record-keeping procedure that

provides for the maintenance of all records necessary to demonstrate its compliance with this Decree, including but not limited to the documents specifically identified below, and to verify that the reports submitted are accurate. Defendant shall maintain and provide the following documents and log to the Monitor on an annual basis following the Effective Date of this Decree:

a.      All forms acknowledging applicants' receipt of the Notice to Applicants and employees' receipt of Defendants' Anti-Discrimination Policies and Procedures

b.      Documents reflecting the provision of training and materials, and names and positions of all attendees for each session;

c.      Documents related to any employment discrimination complaint, the ensuing investigation, and any resolution of such complaint, as required for the centralized complaint and accomodation tracking system;

d.      All documents pertaining to open positions, recruitment, and hiring, including but not limited to postings, advertisements, applications, resumes, interview notes, interview questions, written assessments created by each person involved in the selection process, and any other documents pertaining to the applicant flow log;

e.      All documents related to Defendants' Recruitment Plan and its good faith efforts to meet the hiring goals.

**N.      <u>Reporting</u>**

75.    The Monitor will provide semi-annual reports to the EEOC throughout the duration of the Decree starting six (6) months from the Effective Date, or when Defendant resumes operations.  These reports shall provide:

a.      A statement confirming that Defendant has posted the Website Statement of Equal Opportunity and the Notice of Lawsuit and Resolution, and has consistently provided the Notice to Applicants and Letter to Clients to applicants and clients during the reporting period;

[PROPOSED] CONSENT DECREE

b.      A statement confirming that Defendant maintains anti-discrimination policies and procedures, and distributes them to employees as required by this Decree;

c.      A statement confirming that Defendant tracks discrimination complaints and investigations, and that Defendant has established a toll-free hotline for applicants and employees to submit complaints, as required by this Decree;

d.      Descriptions of complaints received during the reporting period regarding discrimination based on race, national origin, sex, or disability in recruitment and/or referral, and feedback about Defendant's investigations and resolutions;

e.      A statement confirming Defendant's compliance with the anti-discrimination training required by this Decree;

f.      A copy of Defendant's Recruitment Plan, documents related to and implementation of the Recruitment Plan, and the Monitor's feedback on Defendant's Recruitment Plan;

g.      The Applicant Flow Log and Accomodation Log containing the information as set forth in this Decree and the Applicant Data as set forth above within the last six (6) months, including quantification and description of any disparities in referral the Monitor identifies based on race, national origin, disability, or sex;

h.      Documents and reporting on Defendant's efforts to reach the hiring/referral goals , including job postings, applications, and documents related to the referral/hired and selection of referral/hired workers.  Monitor will review and report on whether Defendant has complied with and engaged in good faith efforts to reach the hiring/referral goals.  If the Defendant fails to meet the hiring/referral goals, the Monitor shall assess and report on what additional steps are needed to achieve compliance.

[PROPOSED] CONSENT DECREE

i.      Any underlying documents to support compliance under this Decree.

76.   If and when Defendant resumes operations and implements the Decree, the Monitor shall provide an exit report to the EEOC at least one hundred eighty (180) days prior to the expiration of the Decree covering all the EEO Monitor's responsibilities and providing feedback regarding Defendant's compliance with this Decree. The Monitor shall make recommendations, where appropriate, for extension of the term of the Decree.

## XII.   COSTS AND ATTORNEY'S FEES

77.   Each Party shall bear its own costs of suit and attorneys' fees. Defendant shall bear all costs associated with its administration and implementation of its obligations under this Decree.

## XIII. MISCELLANEOUS PROVISIONS

78.   During the term of this Decree, Defendant shall provide any potential purchaser of its business, or a purchaser or transferee of all or a portion of Defendant's assets, and to any other potential successor, notice about the EEOC's lawsuit, the allegations raised in the Complaint, and the existence and contents of this Decree. Defendant will provide any potential successor with a copy of this Decree within a reasonable time of not less than thirty (30) days prior to the execution of any agreement for acquisition or assumption of control of Defendant's facilities, or any other material change in corporate structure that would affect Defendant's operations.

79.   Defendant will provide written notice to the EEOC within ten (10) days before any transfer, sale, merger, or consolidation of all or a portion of Defendant's assets, or other action providing for a third party to assume control or management over the operation of Defendant's business in whole or in part.  At EEOC's request, Defendant shall provide within ten (10) days all supporting documents.

80.   During the term of this Decree, Defendant and its successors shall ensure that each of its directors, officers, human resource personnel, managers,

supervisors, and team managers are aware of any term(s) of this Decree which may be related to his/her job duties.

81.     Unless otherwise stated, all notices, reports and correspondence required under this Decree shall be delivered to the attention of the Regional Attorney, Anna Y. Park, U.S. Equal Employment Opportunity Commission, Los Angeles District Office, 255 E. Temple St., 4th Fl., Los Angeles, CA 90012.

82.     Defendant shall produce any documents related to this Decree to the EEOC within sixty (60) days of a written request by the EEOC for such records.

83.     The Parties agree to entry of this Decree and judgment subject to final approval by the Court.

84.     The EEOC may be required to report the fact of this settlement to the IRS under Section 162(f) and 6050X of the Internal Revenue Code which allow for certain payments by employers to be deducted from the employer's taxes. If the EEOC is required to do so, the EEOC will provide the employer with a copy of the 1098-F form that it will provide to the Internal Revenue Service (IRS).

85.     Within ten (10) business days of the Effective Date, Defendant agrees to provide the EEOC 1) the Defendant's EIN and 2) the individual and physical address to whom the EEOC should mail the copy of the Form 1098-F, if the EEOC is required to issue one. This identified individual must be an employee of Defendant.

86.     The EEOC has made no representations regarding whether the amount paid pursuant to this settlement qualifies for the deduction under the Internal Revenue Code. The provision of the Form 1098-F by the EEOC does not mean that the requirements to claim a deduction under the Internal Revenue Code have been met.

87.     Any decision about a deduction pursuant to the Internal Revenue Code will be made solely by the IRS with no input from the EEOC. The parties are not acting in reliance on any representations made by the EEOC regarding whether the amounts paid pursuant to this agreement qualify for a deduction under the Internal

Revenue Code.

## XIV.  <u>COUNTERPARTS AND SIGNATURES</u>

88.    Each signatory to this Decree certifies that each is fully authorized to execute this Decree and to bind the parties on whose behalf each signs.

89.    This Decree may be signed in counterparts.  A facsimile signature shall have the same force and effect of an original signature or copy thereof. All parties, through the undersigned, respectfully apply for and consent to the entry of this Decree as an Order of this Court.


                              Respectfully submitted,

                              U.S. EQUAL EMPLOYMENT
                              OPPORTUNITY COMMISSION


Date: 04/05/2024          By:     _/s/ Anna Y. Park_____
                                  Anna Y. Park
                                  Attorney for Plaintiff, EEOC


                              BARONHR


Date: 4.5.24              By:     _/s/  Luis Perez_____
                                  Luis Perez
                                  CEO and/or Owner, Member and/or
                                  Managing Member,
                                  and/or Manager of the following entities:
                                  BaronHR, LLC; BaronHR Group, LLC
                                  (Member or Manager);
                                  BaronHR, Inc.; BaronHR East, Inc.;

30
[PROPOSED] CONSENT DECREE

1
2
3
4
5
6
7
8
9

BaronHR Healthcare LLC; Fortress
Worldwide Holdings;
BaronHR Hospitality LLC; BaronHR
Security, Inc.;
BaronHR Security, LLC; BaronHR
Technical, LLC;
BaronHR West, Inc.; BaronTransport, LLC;
Hunter Staffing, Inc.;
Legendary Staffing, Inc.; and Titan
Personnel, Inc.

10  Agree as to form.

11  Date:  04/05/2024            EEOC
12
13
14                              _/s/ Nakkisa Akhavan_____
15                              Nakkisa Akhavan
16                              Attorney for Plaintiff, EEOC
17
18
19                              BARONHR, LLC
20
21
22  Date:  4/5/2024      By:    _/s/ Michael Weinstein_____
23                              Michael Weinstein
24                              Attorney for Defendant, BaronHR, LLC
25
26
27
28

[PROPOSED] CONSENT DECREE

1
2
3
4
5

**ORDER**

6       The provisions of the Consent Decree have been entered into in good faith
7   and are fair, reasonable, and adequate.    The Consent Decree is hereby approved
8   and compliance with all provisions thereof is HEREBY ORDERED. The Court
9   hereby retains jurisdiction over this Consent Decree until its termination.
10  IT IS SO ORDERED.
11
12
13  Dated: April 8, 2024                   _____
14                                          HON. GEORGE H. WU,
                                            United States District Judge
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] CONSENT DECREE